[Cite as *State v. Thompson*, 2019-Ohio-2525.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

        Plaintiff-Appellee,             :               No. 18AP-211
                                                       (C.P.C. No. 17CR-3403)

v.                                         :

                                                       (REGULAR CALENDAR)

Lee C. Thompson, Jr.,                      :

        Defendant-Appellant.          :

---

D E C I S I O N

Rendered on June 25, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton,* for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann,* for appellant. **Argued:** *George M. Schumann.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}   Defendant-appellant, Lee C. Thompson, Jr., appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of domestic violence.  For the following reasons, we affirm.

### I. Facts and Procedural History

{¶ 2}   By indictment filed June 20, 2017, plaintiff-appellee, State of Ohio, charged Thompson with one count of domestic violence in violation of R.C. 2919.25, a felony of the third degree; and one count of abduction in violation of R.C. 2905.02, a felony of the third degree.  Thompson entered a plea of not guilty.

{¶ 3}   At a trial beginning January 21, 2018, the state presented the testimony of only two witnesses.  J.S. testified she became romantically involved with Thompson and

the two of them lived together on Sullivant Avenue.  Eventually, J.S. and Thompson moved across the street and lived with a woman whom Thompson referred to as mom, though she was not his biological mother.  J.S. said they lived in that house from August 2016 to October or November 2016.  In total, J.S. testified her relationship with Thompson lasted three and one-half months.

{¶ 4}  J.S. testified that during their relationship, Thompson would hit her, push her up against the wall, and smack her in the face.  J.S. described one instance in which she tried to leave and Thompson smacked her so hard that her glasses broke.  She said she was "[s]cared and nervous" to see Thompson in court again because she had not seen him since she left the relationship.  (Tr. Vol. II at 31.)

{¶ 5}  J.S. then described an incident on November 20, 2016 in which she went with Thompson to his brother's house to play cards and drink beer.  After saying something that upset Thompson, J.S. said she left the house and started running away but Thompson chased her.  J.S. said she ran in front of traffic on Mound Street in an attempt to escape but Thompson caught her and pushed her to the ground.  At that point, J.S. said Thompson had his knees on her lower back and was pushing her head into the ground.  J.S. testified that Thompson then stood up and started kicking her in the ribs, telling her "I told you I'd never put my hands on you, but I never said nothing about my feet."  (Tr. Vol. II at 33.) After the altercation, J.S. said Thompson picked her up and forced her back to his brother's residence.

{¶ 6}  J.S. said she did not leave Thompson immediately because every time she had tried to leave him before, he would become violent.  The next day, J.S. went with Thompson to another friend's house where she said she sat silently because she was not "allowed" to speak.  (Tr. Vol. II at 37.)  J.S. testified Thompson had previously told her "[y]ou don't have no business talking.  There's nothing for you to say.  Just sit there.  That's what you do as a woman."  (Tr. Vol. II at 38.)

{¶ 7}  J.S. stayed with Thompson for a few more days and then formulated a plan to escape.  She told Thompson she was going to donate plasma, which she had done previously, and then she left the house.  She testified she did not take her purse with her or any belongings; she just left the house. J.S. said that after donating plasma, she called her son to pick her up, and she stayed with her son for a couple of days.  However, J.S. testified

she did not immediately file a police report because she was afraid that Thompson might see her somewhere before police were able to apprehend him.

{¶ 8}   After staying with her son for several days, J.S. said she then went to a homeless shelter.  On November 27, 2016, J.S. was experiencing pain in her ribs and it was hard for her to breathe so she went to the hospital.  An examination revealed internal bruising on her ribs and indentations on her sides from Thompson's shoes.  J.S. testified that hospital personnel called the police to make a report.  Two police officers came to the hospital and interviewed J.S.  After the interview, police officers drove J.S. to the homeless shelter to retrieve her belongings and then they transported J.S. to a domestic violence shelter.  J.S. testified she stayed at the domestic violence shelter until February 2017.

{¶ 9}   James Null, an officer with the Columbus Division of Police, testified that he responded to a call to Mount Carmel West Hospital on November 27, 2016.  At the hospital, Officer Null took a statement from J.S. regarding the November 20, 2016 incident and the abuse she suffered while in a relationship with Thompson.  Following the interview, Officer Null said he administered a series of screening questions to J.S. to see whether she would benefit from admission to the Choices program, a shelter for victims of domestic violence.  Officer Null testified he then transported J.S. to the homeless shelter to collect her belongings and then to Choices.

{¶ 10}  Thompson did not call any witnesses.  Following deliberations, the jury found Thompson guilty of domestic violence with the specific finding that Thompson had two or more prior domestic violence convictions.  However, the jury found Thompson not guilty of abduction.  Following a February 21, 2018 sentencing hearing, the trial court sentenced Thompson to three years in prison to run consecutive to Thompson's sentence in a separate criminal case.  The trial court journalized Thompson's conviction and sentence in a February 23, 2018 judgment entry.  Thompson timely appeals.

## II.  Assignments of Error

{¶ 11}  Thompson assigns the following errors for our review:

> [1.] Trial counsel rendered ineffective assistance in violation of the Defendant's rights to counsel and to a fair trial under U.S. Const. Amend. V, VI, and XIV, and Ohio Const. Art I, § 10 and 16.

[2.] The cumulative effect of the ineffectiveness of appellant's counsel combined to deny appellant a fair trial guaranteed by the United States and Ohio Constitutions.

### III. First Assignment of Error – Ineffective Assistance of Counsel

{¶ 12} In his first assignment of error, Thompson argues he received the ineffective assistance of counsel. More specifically, Thompson asserts his trial counsel was ineffective in failing to make various objections, stipulating to extraneous facts, and failing to request a limiting instruction.

{¶ 13} In order to prevail on a claim of ineffective assistance of counsel, Thompson must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Thompson to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Thompson can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Thompson must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 14} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Thompson contends his trial counsel was ineffective in (1) failing to object to testimony of prior incidents of domestic violence; (2) failing to request a limiting instruction concerning the testimony of prior incidents of domestic violence; (3) stipulating to the admission of extraneous factual details related to Thompson's prior convictions; (4) failing to object to the prosecutor's statements regarding J.S.'s credibility during closing arguments; (5) failing to object to hearsay in Officer Null's testimony; and (6) failing to object to the trial court's non-neutral statements made in the presence of the jury.

## A.  Prior Incidents of Domestic Violence

{¶ 15}  Thompson's first allegation of ineffective assistance of counsel is his trial counsel's failure to object to the testimony surrounding prior alleged instances of domestic violence.  More specifically, Thompson argues his counsel was deficient in failing to make a single objection to any of J.S.'s testimony including what he deems to be the extraneous details of his prior history of domestic violence with J.S.  A trial counsel's failure to object to testimony does not amount to ineffective assistance of counsel unless the defendant can demonstrate a reasonable probability that, but for his counsel's failure to object, the result of the proceedings would have been different.  *State v. Watts*, 10th Dist. No. 15AP-951, 2016-Ohio-5386, ¶ 42, citing *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 24.

{¶ 16}  As Thompson notes, the indictment specified that he had prior convictions for domestic violence.  At trial, the parties stipulated that Thompson had a domestic violence conviction in April 2015 and another domestic violence conviction in August 2014.  Despite the stipulation, J.S. then testified that Thompson had previously been violent toward her, describing incidents in which he would hit or smack her, including a time when he broke her eye glasses.  J.S. testified she was afraid of Thompson based on his prior history of violence toward her.  J.S. also testified that Thompson would routinely instruct her not to speak in front of his friends and she indicated that she did not leave Thompson because every time she tried to leave him, he would become violent.  Thompson's trial counsel did not object to any of this testimony, and Thompson now argues this testimony amounted to inadmissible other acts evidence under Evid.R. 404(B).

{¶ 17}  Evid.R. 404(B) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Though Thompson argues the sole purpose of J.S.'s testimony regarding the prior incidents was to show he acted in conformity with that prior behavior, we are mindful that Count 2 of the indictment charged Thompson with abduction.  Under R.C. 2905.02, no person shall "[b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other

person in fear." R.C. 2905.02(A)(2). In other words, as charged in Thompson's indictment, the state was required to prove that Thompson placed J.S. "in fear" in order to prove abduction. J.S.'s testimony regarding Thompson's prior violent behavior tends to prove why she would be in fear of him for purposes of Count 2 of the indictment. J.S.'s testimony about Thompson's prior violent behavior was relevant to the charge of abduction, and the trial court likely would have overruled any objection had Thompson's trial counsel objected.

{¶ 18} Moreover, the jury found Thompson not guilty of abduction under Count 2 of the indictment. Thus, to the extent Thompson argues that the challenged testimony was unduly prejudicial and should have warranted an objection, we note that the jury was able to parse through J.S.'s testimony and discern which portions supported a finding of guilt beyond a reasonable doubt and which portions did not. J.S. testified in great detail about the events supporting Count 1, the charge of domestic violence, testimony that was not dependent on Thompson's prior behavior. Even without her testimony about Thompson's prior conduct, J.S. provided very clear testimony regarding the events of November 20, 2016 that were sufficient to find Thompson guilty of domestic violence. On this record, Thompson cannot demonstrate that the results of the proceeding would have been different had his counsel objected to J.S.'s testimony about Thompson's prior behavior toward her. Thus, trial counsel's failure to object to this testimony does not substantiate a claim for ineffective assistance of counsel.

{¶ 19} Thompson additionally argues that his trial counsel was deficient in failing during voir dire to elicit more specific responses from potential jurors on whether they were able to understand that Thompson's prior convictions for domestic violence did not tend to show he was more likely to have committed the indicted offense. However, the trial court instructed the jury that Thompson's prior convictions did not show he had a propensity to commit the present offense. Jurors are presumed to follow the trial court's instructions. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 192, citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994). Thus, we conclude trial counsel's conduct during voir dire on this issue was not deficient conduct.

### B.  Limiting Instruction

{¶ 20} Thompson next argues that even if J.S.'s testimony about his prior violent behavior was admissible, his trial counsel was nonetheless deficient in failing to request a limiting instruction on the permissible purpose of the testimony.

{¶ 21} Strategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel. *State v. Glenn-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 56, citing *Columbus v. Oppong*, 10th Dist. No. 15AP-1059, 2016-Ohio-5590. As a general rule, the decision of whether or not to request a particular jury instruction is a matter of trial strategy and, for that reason, will not substantiate a claim of ineffective assistance of counsel. *Id.* We see no reason to deviate from the general rule here.

{¶ 22} This court has previously noted that trial counsel's decision not to request a limiting instruction on other acts evidence can represent a tactical decision not to draw additional attention to the other acts testimony *State v. Rawls*, 10th Dist. No. 03AP-41, 2004-Ohio-836, ¶ 42, citing *State v. Schaim*, 65 Ohio St.3d 51, 61 (1992), fn. 9. Further, we need not decide whether this decision amounted to a reasonable trial strategy because we find no reasonable probability the outcome of Thompson's trial would have been different had trial counsel requested the limiting instruction. *State v. Ferguson*, 10th Dist. No. 07AP-999, 2008-Ohio-6677, ¶ 66, citing *Strickland* at 694. In particular, as we noted above, the jury found Thompson not guilty on the abduction charge, indicating the jury was able to sort through the testimony and determine its weight for each of the indicted charges. Also, J.S. provided specific, detailed testimony relating solely to the events of November 20, 2016 that, standing alone, was enough to establish Thompson's guilt on the charge of domestic violence. Thus, because Thompson cannot show prejudice from trial counsel's failure to request a limiting instruction, the lack of limiting instruction will not substantiate a claim of ineffective assistance of counsel. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 69 (a defendant cannot substantiate a claim of ineffective assistance of counsel based on a strategic or tactical decision of counsel from which the defendant cannot show prejudice).

## C.  Stipulations Related to Prior Convictions

{¶ 23} Thompson's third alleged instance of ineffective assistance of counsel is his trial counsel's stipulation to what he deems "extraneous factual details" surrounding his prior convictions for domestic violence.  (Thompson's Brief at 30.)  As to the stipulation for the first prior conviction of domestic violence, Thompson argues trial counsel should have limited the stipulation to the entry of conviction and not agreed to admission of the criminal complaint.  As to the second prior conviction of domestic violence, Thompson argues his counsel was deficient in failing to verify that the entry of conviction was redacted as it related to substance abuse and mental health issues as well as the identity of the victim in that case.

{¶ 24} Trial counsel noted on the record it was agreeing to the stipulation to the criminal complaint because the sentencing entry related to that conviction did not make it clear what the conviction was for.  This was a reasonable explanation for counsel's decision.  For the second domestic violence conviction, the trial court indicated it was planning to redact the judgment entry but ultimately failed to do so.  However, for the same reasons we outlined above, Thompson cannot demonstrate prejudice from this extraneous information reaching the jury.  The jury had ample evidence to support Thompson's guilt on the charge of domestic violence from J.S.'s testimony that related solely to the events of November 20, 2016.  Accordingly, we conclude trial counsel's stipulations related to the prior convictions did not amount to the ineffective assistance of counsel.

## D.  Prosecutor's Closing Argument

{¶ 25} Thompson's fourth alleged instance of ineffective assistance of counsel is his trial counsel's failure to object during the prosecutor's closing arguments when the prosecutor remarked on J.S.'s credibility.  In arguing to the jurors that they needed to only believe one witness to convict Thompson, the prosecutor stated "I ask you to judge [J.S.'s] credibility; and I would submit she's credible; and I ask you to return guilty as to both counts."  (Tr. Vol. II at 117.)  The prosecutor then repeated a similar phrase twice during its rebuttal closing.

{¶ 26} Generally, "[i]t is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused."  *State v. Williams*, 79 Ohio St.3d 1, 12 (1997), citing *State v. Thayer*, 124 Ohio St. 1 (1931).  The state

responds that the prosecutor was not vouching for the witness's credibility but instead was submitting to the jury that J.S. provided credible testimony. We need not determine whether these statements amounted to improper vouching by the prosecutor, however, because even if they did, the trial court instructed the jury that closing arguments are not evidence and that it is for the jury alone to determine the credibility of any particular witness. *Thompson* at ¶ 192 (jurors are presumed to follow a court's instructions). Moreover, here the jury found Thompson guilty of Count 1 but not guilty of Count 2, indicating the jury independently evaluated the entirety of J.S.'s testimony and decided which portions it found credible and which portions it did not. Thus, because Thompson does not show prejudice from his trial counsel's lack of objection to these remarks, the lack of objection during closing arguments does not substantiate a claim of ineffective assistance of counsel.

### E. Hearsay Testimony

{¶ 27} Thompson's fifth alleged instance of ineffective assistance of counsel is his trial counsel's failure to object to hearsay in Officer Null's testimony. More specifically, Officer Null reviewed his report from the incident and then testified that J.S. completed a domestic violence screening questionnaire to aid the decision of whether she should go to a domestic violence shelter. Thompson asserts this testimony was hearsay used to bolster J.S.'s testimony and that his trial counsel was deficient in failing to object.

{¶ 28} A statement is inadmissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C) and 802. There are exceptions to the hearsay rule, however, and those exceptions are listed in Evid.R. 803 and 804. "In general, statements offered by police officers explaining their conduct while investigating a crime 'are not hearsay because they are not offered for their truth, but, rather, are offered as an explanation of the process of investigation.' " *State v. Bartolomeo*, 10th Dist. No. 08AP-969, 2009-Ohio-3086, ¶ 17, quoting *State v. Warren*, 8th Dist. No. 83823, 2004-Ohio-5599, ¶ 46. Here, Officer Null was describing his investigatory process and explaining the steps he took in interviewing J.S., including referring her to a domestic violence shelter. He was not vouching for J.S.'s credibility or stating that J.S. was definitively a victim of domestic violence; rather, he was describing his conduct as he investigated the events of November 20, 2016. Thus, because this testimony was not offered for the truth of the

matter asserted, it was not hearsay, and Thompson's trial counsel was not deficient in failing to object to it.

### F. Trial Court's Non-Neutral Statements

{¶ 29} Thompson's sixth and final alleged instance of ineffective assistance of counsel is his trial counsel's failure to object to the trial court's statements that Thompson characterizes as non-neutral.

{¶ 30} After explaining the charges against Thompson, the trial court stated to the potential jurors:

> * * * Again, back in November of 2016 is when this happened. It didn't get indicted by the state for some months afterwards, but that's when it happened.
>
> It happened around Mound and Terrace at Mr. Thompson's brother's home. That's where it's alleged to have happened. And then part of the other dispute between Mr. Thompson and [J.S.] took place at his apartment, which was around South Columbian and Sullivant Avenue. * * *

(Voir Dire Tr. at 6-7.) Thompson argues that because the trial court used the phrase "it happened" without consistently using the word "allegedly" to modify it, the trial court was making a non-neutral statement to the jury that it believed J.S. that a crime had occurred. Accordingly, Thompson argues his trial counsel should have objected.

{¶ 31} We do not agree with Thompson's characterization of these statements as non-neutral. When read in context, the trial court refers to the "alleged" incident, and the statements were intended as general background to the dispute. The purpose of this colloquy was to gauge whether any potential jurors may recognize either Thompson or J.S. Because these statements were appropriate, Thompson's counsel was not deficient in failing to object.

{¶ 32} Next, Thompson argues the trial court made a non-neutral statement when it explained the concept that only one witness is necessary to prove a case beyond a reasonable doubt. Thompson asserts the trial court's preliminary instruction on this concept had the effect of bolstering the state's theory of the case as the state was going to rely solely on J.S.'s testimony. However, the trial court did not misstate the concept or the law and was simply offering an explanation for an anticipated legal concept at trial.

Thompson points to no authority indicating a trial court errs when making such preliminary instructions. Thus, his trial counsel's failure to object on this point was not deficient.

{¶ 33} Thompson also argues the trial court made a non-neutral statement when it told the jury the trial court would act as the jury's lawyer, but it is the jury's job to judge the facts. Thompson asserts this statement was confusing for the jury. However, when read in context, the trial court was explaining to the jury that it would be instructing the jury on the law at the end of the presentation of evidence and that the jury would ultimately decide the facts applicable to those legal rules. We do not agree with Thompson that this statement was confusing to the jury, and thus Thompson's trial counsel was not deficient in failing to object to this statement.

{¶ 34} Finally, Thompson argues the trial court erred when it asked defense counsel, in the presence of the jury, whether Thompson intended to testify. We agree with Thompson that the general rule is that "[i]t is improper for either the prosecutor or the court to comment on a defendant's invocation of his right to remain silent." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 68. However, here, the trial court was not commenting on Thompson's decision not to testify; rather, the trial court was clarifying a procedural point of whether the defense would be calling any witnesses as defense counsel had indicated during voir dire that it would decide "later" whether Thompson would testify or not. (Voir Dire Tr. at 79.) Thompson does not articulate what prejudice resulted from the trial court's inquiry at the close of state's evidence whether Thompson intended to testify. Thus, his trial counsel's failure to object to the trial counsel's question in the presence of the jury will not substantiate a claim of ineffective assistance of counsel.

{¶ 35} In sum, Thompson fails to demonstrate from his six alleged instances of ineffective assistance of counsel that either his counsel was deficient or that he suffered any prejudice as a result. Accordingly, Thompson did not receive the ineffective assistance of counsel under the *Strickland* test. We overrule his first assignment of error.

## IV.  Second Assignment of Error – Cumulative Effects of Errors

{¶ 36} In his second and final assignment of error, Thompson argues the cumulative effect of his trial counsel's errors resulted in him being denied a fair trial.

{¶ 37} Thompson relies on *State v. DeMarco*, 31 Ohio St.3d 191 (1987) for the proposition that although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id.* at paragraph two of the syllabus. Thompson urges us to conclude that his trial counsel's many errors, when considered together, deprived him a fair trial.

{¶ 38} Even if we were to agree with Thompson that his counsel's overall performance was deficient under the first prong of *Strickland*, we are nonetheless constrained by the second prong of *Strickland* which requires Thompson to demonstrate that but for his counsel's performance, the outcome of the proceedings would have been different. Here, as we noted throughout our analysis of Thompson's first assignment of error, J.S. provided specific, detailed testimony surrounding the events of November 20, 2016 that, standing alone, was sufficient to prove Thompson's guilt. Although Thompson complains about his trial counsel's various failures in regard to his conduct, we do not find that Thompson can overcome the fact that the victim testified very clearly about what happened in this case. Thus, because Thompson is unable to demonstrate the requisite prejudice under the second prong of *Strickland*, the cumulative effect of the alleged errors did not deprive him of a fair trial. *Hughes* at ¶ 74. Accordingly, we overrule Thompson's second and final assignment of error.

## V. Disposition

{¶ 39} Based on the foregoing reasons, Thompson did not receive the ineffective assistance of counsel, and the cumulative effect of Thompson's trial counsel's alleged errors did not operate to deprive him of a fair trial. Having overruled Thompson's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., concurs.
DORRIAN, J., concurs and concurs in judgment only.

DORRIAN, J., concurring and concurring in judgment only.

{¶ 40} I concur with the majority that Thompson did not receive the ineffective assistance of counsel and the cumulative effect of any alleged errors did not operate to deprive him of a fair trial.

{¶ 41} However, I concur in judgment only regarding whether the failure to object to Officer Null's testimony on the screening for eligibility for the Choices shelter constituted ineffective assistance of counsel. I would conclude that it did not amount to ineffective assistance of counsel because no prejudice resulted therefrom. As noted by the majority, the jury had ample evidence to support Thompson's guilt on the charge of domestic violence from J.S.'s testimony regarding what happened the evening of November 20, 2016, without testimony of the officer's interview of her regarding eligibility for the Choices shelter.

_____