[Cite as *State v. Burks*, 2024-Ohio-17.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | No. 21AP-657 |
| | : | (C.P.C. No. 20CR-5832) |
| v. | : | (REGULAR CALENDAR) |
| Jamual S. Burks, | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

D E C I S I O N

Rendered on January 4, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly Bond*, for appellee/cross-appellant. **Argued:** *Kimberly Bond.*

**On brief:** *Carpenter Lipps & Leland LLP*, and *Kort Gatterdam*, for appellant/cross-appellee. **Argued:** *Kort Gatterdam.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant/cross-appellee, Jamual S. Burks, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of felonious assault, discharge of a firearm on or near prohibited premises, tampering with evidence, and having a weapon while under disability. Plaintiff-appellee/cross-appellant, State of Ohio, appeals from the same judgment entry relative to the trial court's imposition of sentence. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} By indictment filed December 14, 2020, the state charged Burks with two counts of felonious assault, in violation of R.C. 2903.11, both second-degree felonies; one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162, a first-degree felony; one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony; and one count of having weapons while under disability, in violation of R.C. 2923.13, a third-degree felony. Both of the felonious assault charges and the discharge of a firearm on or near prohibited premises charge contained accompanying three-year firearm specifications pursuant to R.C. 2941.145(A), while the tampering with evidence charge contained an accompanying one-year firearm specification pursuant to R.C. 2941.141(A). Additionally, the two felonious assault charges each contained an accompanying repeat violent offender ("RVO") specification pursuant to R.C. 2941.149(A). The charges related to an interaction with Fredy Aquino and Jose Jiminez following a car accident on or about December 5, 2020. Burks entered a plea of not guilty.

{¶ 3} Burks elected to waive his right to a jury trial on the having weapons under disability charge and the RVO specifications attached to the felonious assault charges. The trial court conducted a jury trial on the remaining charges beginning August 23, 2021.

{¶ 4} During the trial, Aquino testified he was driving home with his friend, Jiminez, on the evening of December 5, 2020 when they were involved in a traffic accident. Acquino felt the impact of the collision, testifying that the front and side airbags of their vehicle deployed. Acquino testified he was in shock after the accident.

{¶ 5} Jiminez testified he hit his head against the car window during the collision. He said he tried to ask Acquino what happened, but that Acquino did not respond and appeared to be in shock. Jiminez said he then got out of the car and heard someone say "fucking Mexicans." (Aug. 23, 2021 Tr. Vol. II at 311.) Based on the pattern of speech, Jiminez testified he believed the speaker was African American, and he said it was a "[m]asculine" voice. (Tr. Vol. II at 315.) While he was standing outside of the vehicle, Jiminez heard gun shots. Jiminez said he ran to get Acquino out of the car, but he could not open the driver's side door. Jiminez then returned to the passenger side, pulled Acquino's shirt, and told his friend to get out of the car and to start running because someone was shooting at them.

{¶ 6}   Acquino testified he did not hear the initial gunshot but that he heard gunshots once he was running with Jiminez.  It was not until Acquino encountered police officers who saw that he was bleeding that he realized he had been shot.  Acquino said he did not feel the gunshot happen.  The police officers transported Acquino to the hospital where he was treated for a gunshot wound to the left buttock.  Doctors were unable to remove the bullet from Acquino's buttock as removing the bullet risked making Acquino's injury worse.  Neither Acquino nor Jiminez saw the shooter or any individual firing a gun in their direction.

{¶ 7}   Dianne Stepp lives near the scene of the accident and testified she heard the car accident from inside her house.  When she looked out her door to see what happened, Stepp said she saw a "boy" shooting in the car, and she identified Burks as the shooter.  (Tr. Vol. II at 323.)  After the shooting, Stepp said she saw Burks run down the street and hide the gun in the bushes.  She also said there was a woman standing with Burks.  Stepp said Burks then walked up the street "like he didn't know what was happening," but that when police came to investigate Stepp identified Burks as the shooter to the police and told them where he hid the gun.  (Tr. Vol. II at 330.)

{¶ 8}   Law enforcement officers subsequently recovered a Taurus 22-caliber semi-automatic handgun from the bushes in the vicinity where Stepp told police she saw Burks hide the gun.  When the police apprehended Burks, the officers found a magazine for a 22-caliber handgun on his person.  Additionally, police recovered ten casings for a 22-caliber gun on the ground by Burks's car.  Subsequent ballistics testing indicated the shell casings recovered at the scene of the car accident matched the handgun recovered from the bushes.  The detectives investigating the case did not collect fingerprints or DNA evidence from the vehicles or firearms, nor did detectives conduct a gunshot residue test on Burks.

{¶ 9}   Outside of the presence of the jury, the parties stipulated to Burks's prior criminal conviction to support the RVO specifications and the having a weapon under disability offense.  Following deliberations, the jury found Burks guilty of both counts of felonious assault, discharge of a firearm on or near prohibited premises, and tampering with evidence, along with the accompanying firearm specifications.  The trial court then found Burks guilty of having a weapon while under disability and the two RVO specifications.

{¶ 10} At a November 17, 2021 sentencing hearing, the state argued the Reagan Tokes Law, R.C. 2929.14, required the court to impose indefinite sentences. The trial court acknowledged the Reagan Tokes Law but found the indefinite sentencing structure contained therein to be unconstitutional. The trial court then sentenced Burks to definite 8-year terms for the first- and second-degree felony offenses in Counts 1, 2, and 3, ordering the definite terms to run concurrent with each other but consecutive to 2 of the firearm specifications and 1 of the RVO specifications. Additionally, the trial court imposed a 3-year sentence for the tampering with evidence conviction and for the having a weapon under disability conviction, ordering those sentences to run concurrent to all counts. In total, the trial court imposed an aggregate prison term of 15 years. The trial court journalized Burks's convictions and sentence in a November 21, 2021 judgment entry.

{¶ 11} Burks timely appealed, and the state timely cross-appealed from the imposition of definite prison terms. In a September 21, 2022 journal entry, this court sua sponte stayed the appeal and cross-appeal pending the Supreme Court of Ohio's determination of *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535. On July 26, 2023, the Supreme Court issued its decision in *Hacker* overruling facial constitutional challenges to the Reagan Tokes Law. *Id.* This court subsequently reactivated the appeal and cross-appeal on August 10, 2023.

## II. Assignments of Error

{¶ 12} Burks assigns the following three assignments of error for our review:

[I.] The trial court violated appellant's rights to due process and a fair trial when it entered a judgment of conviction based on insufficient evidence and against the manifest weight of the evidence in violation of appellant's rights under the United States and Ohio Constitutions.

[II.] The trial court erred in providing the jury with a *Howard* instruction which denied appellant due process and a fair trial.

[III.] Appellant was deprived of the effective assistance of trial counsel in violation of appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section (sic) 10 and 16, Article I of the Ohio Constitution.

{¶ 13} Additionally, the state assigns the following sole cross-assignment of error for our review:

> The trial court erred by imposing definite prison terms in contravention of the Reagan Tokes Act.

## III. Burks's First Assignment of Error – Sufficiency and Manifest Weight of the Evidence

{¶ 14} In his first assignment of error, Burks argues there was insufficient evidence to support his convictions of felonious assault, discharge of a firearm on or near prohibited premises, tampering with evidence, and having a weapon while under disability and that his convictions are against the manifest weight of the evidence.

### A. Sufficiency of the Evidence

{¶ 15} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 16} The jury convicted Burks of two counts of felonious assault, one count of discharge of a firearm on or near prohibited premises, and one count of tampering with evidence, while the trial court convicted Burks of one count of having a weapon while under disability. Felonious assault is proscribed by R.C. 2903.11(A), which states that no person shall knowingly cause serious physical harm to another or cause, or attempt to cause, physical harm to another by means of a deadly weapon. The offense of discharge of a firearm on or near prohibited premises provides, as relevant here, "[n]o person shall * * * [d]ischarge a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). The offense of tampering with evidence, contained in R.C. 2921.12(A)(1), provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Finally, to prove Burks committed the offense of having a weapon while under disability, the state

was required to prove that Burks knowingly acquired, had, carried, or used a firearm, and had been convicted of a felony offense of violence.  R.C. 2923.13(A)(2).

{¶ 17}  Burks does not challenge the sufficiency of the evidence related to any of the specific elements of the charged offenses.  Instead, his entire argument related to the sufficiency of the evidence is that the state provided insufficient evidence of his identity as the perpetrator.  More specifically, Burks asserts the state's evidence was insufficient because neither of the victims identified him as the shooter and because the state did not present any forensic or ballistic evidence linking the shell casings or recovered firearm to Burks.

{¶ 18}  As an initial matter, we note that Burks's argument ignores that the state did present direct evidence of his identity: the testimony of Stepp, the eyewitness to the shooting.  Though Burks argues Stepp's testimony lacks credibility and should not be believed, "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.  Stepp testified she saw Burks firing a gun into the vehicle of Acquino and Jiminez and that Burks then hid the gun in the bushes.  Thus, Stepp's testimony, alone, is sufficient evidence to support Burks's convictions.

{¶ 19}  Further, to the extent Burks argues there is insufficient evidence to support his convictions because the state relied largely on circumstantial evidence, we are mindful that the state may establish the identity of a perpetrator by the use of either direct or circumstantial evidence. *State v. Guevara*, 10th Dist. No. 21AP-414, 2023-Ohio-1448, ¶ 16, citing *State v. Bias*, 10th Dist. No. 21AP-329, 2022-Ohio-4643, ¶ 36.  "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " (Further internal quotation and citation omitted.) *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26.  Circumstantial evidence has the same probative value as direct evidence. *Robinson* at ¶ 20, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) (stating

" 'circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt' ").

{¶ 20} Here, although the state did not present forensic evidence of Burks's DNA or fingerprints on the weapon and although police did not conduct a gunshot reside test on Burks, the state did present evidence that police found a 22-caliber magazine on Burks's person at the time of his arrest. The shell casings surrounding Burks's car came from a 22-caliber weapon and the gun recovered from the nearby bushes was a 22-caliber handgun. From this evidence, coupled with Stepp's testimony, the trier of fact could infer that Burks was the shooter. Thus, based on the direct evidence of Stepp's eyewitness identification of Burks and the circumstantial evidence of the magazine found on Burks' person as well as the shell casings and firearm, the state presented sufficient evidence to establish Burks's identity as the perpetrator. Accordingly, there was sufficient evidence to support Burks's convictions.

### B. Manifest Weight of the Evidence

{¶ 21} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins*, 78 Ohio St.3d at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the [manifest] weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 22} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a

new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 23} Burks argues his convictions are against the manifest weight of the evidence on the basis that the state's evidence establishing his identity as the shooter was weak and that the eyewitness testimony of Stepp lacked credibility and should not be believed. Burks points to several inconsistencies in Stepp's testimony. First, he notes that Stepp insisted the shooting happened during the day but points out that police received the call at approximately 7:00 p.m. in December. Burks asserts it would have been dark outside at 7:00 p.m., and thus Stepp either could not have seen as clearly as she said she did or she should not be believed for misremembering the time of the event. Additionally, Burks notes Stepp testified she heard two or three gunshots, but the subsequent investigation yielded ten shell casings near Burks's vehicle. Burks also calls into question Stepp's in-court identification of Burks, arguing the darkness and her distance from the car accident would make her ability to identify the shooter very difficult.

{¶ 24} Though we agree with Burks there are some discrepancies in Stepp's testimony, we do not agree that these discrepancies rendered all of Stepp's testimony lacking credibility to such a degree that it could not be believed. As noted above, it is for the jury to take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *Raver* at ¶ 21. We also note that the evidence of the subsequent investigation, including the spent shell casings, the recovered firearm, and the 22-caliber magazine found on Burks's person corroborates Stepp's version of the events, including her identification of Burks as the perpetrator. Thus, we cannot say the jury lost its way in believing Stepp's testimony that Burks was the shooter.

{¶ 25} Further, to the extent Burks relies on a lack of forensic or DNA evidence linking him to the scene of the offenses, this court has repeatedly stated that " 'a lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *State v. Murray*, 10th Dist. No. 16AP-16, 2017-Ohio-949, ¶ 38, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing

*State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence.' " *Peeples* at ¶ 21, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16. As stated above, although Burks complains that Stepp's testimony contained inconsistencies, her testimony was not so incredible that a jury could not believe the portions of her testimony establishing Burks as the perpetrator. Moreover, the forensic evidence the state did present connected the shell casings to the gun recovered near the scene, corroborating Stepp's testimony that she saw Burks fire his weapon before hiding the gun in the nearby bushes. Additionally, Burks had a 22-caliber magazine on his person when police apprehended him, adding further corroboration to Stepp's testimony. Taken together, Stepp's testimony and the corroborating evidence provided credible evidence from which the jury could conclude Burks was the shooter.

{¶ 26} Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in finding Burks guilty of felonious assault, discharge of a firearm on or near prohibited premises, and tampering with evidence. After an independent review of the record, we find Burks's convictions are not against the manifest weight of the evidence. Having additionally concluded there was sufficient evidence to support Burks's convictions, we overrule Burks's first assignment of error.

## IV. Burks's Second Assignment of Error – *Howard* Instruction

{¶ 27} In his second assignment of error, Burks argues the trial court erred in providing a *Howard* instruction to the jury during deliberations. *See State v. Howard*, 42 Ohio St.3d 18 (1989).

{¶ 28} "[T]he *Howard* charge is ' "intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." ' " *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 42, quoting *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 38, quoting *State v. Robb*, 88 Ohio St.3d 59, 81 (2000). "Whether the jury is irreconcilably deadlocked is essentially ' "a necessarily discretionary determination" ' for the trial court to make." *Norman* at ¶ 41 (noting trial courts weighing the *Howard* charge must evaluate circumstances specific to each individual case), quoting *Brown* at

¶ 37, quoting *Arizona v. Washington*, 434 U.S. 497, 510 (1978), fn. 28.  We review a trial court's decision to give a *Howard* charge to a deadlocked jury for an abuse of discretion. *Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, ¶ 25, citing *Brown* at ¶ 37 ("a trial court's decision whether and when to provide [the *Howard* instruction] is a matter within the court's discretion and is reviewed only for an abuse of that discretion"). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} On the second day of deliberations, the jury wrote to the trial court the following question:

> The jury is really struggling to unanimously come to a decision. In the event we do not, what is the duration of time to deliberate? Conversation is cyclical and some are feeling like we/they may need to change their positions or concede just to come to a decision. Any advice, reminders, suggestions you may share to help us push forward?

(Tr. Vol. IV at 577-78.)  In response, the state requested a *Howard* charge.  Defense counsel disagreed and argued "the *Howard* charge tends to sometimes push people that are maybe not really ready to concede to concede."  (Tr. Vol. IV at 579.)  Over the objection of defense counsel, the trial court provided the jury with the *Howard* charge, instructing the jury that "[j]urors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath," and "jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."  (Tr. Vol. IV at 583.)  Approximately 90 minutes after the trial court provided the *Howard* instruction, the jury indicated it had reached a verdict.

{¶ 30} On appeal, Burks argues the trial court abused its discretion in providing the *Howard* charge.  He asserts the jury was not irreconcilably deadlocked but merely inquiring about how long they should deliberate.  We are mindful, however, that "[t]here is no bright-line test to determine what constitutes an irreconcilably deadlocked jury," and that "the court must evaluate each case based on its own particular circumstances." *Norman* at ¶ 41, citing *Brown* at ¶ 37, citing *State v. Mason*, 82 Ohio St.3d 144, 167 (1998).  Having reviewed the record, we find no abuse of discretion in the trial court's determination that the jury

was irreconcilably deadlocked. Given the wording of the jury's question, the trial court reasonably interpreted the jury's question as indicating a deadlocked jury. *See State v. Shepard*, 10th Dist. No. 07AP-223, 2007-Ohio-5405, ¶ 12 ("there is no requirement that jury explicitly" use the word "deadlocked" in its question to the court, and it is for the trial court, in its discretion, to determine whether the question from the jury indicates a deadlocked jury). Further, though Burks notes the jury had only been deliberating for approximately six hours when it submitted the question, "[t]here is no required period that a trial court must wait in order for the *Howard* charge to be appropriate." *Shepard* at ¶ 11 (noting "[a] trial court's delivery of the *Howard* charge after only a few hours of deliberation has been upheld in numerous cases"). The content of the jury's question indicated it was deadlocked and was at an impasse. Thus, we do not agree with Burks that the jury could not have been considered deadlocked after six hours of deliberations.

{¶ 31} Additionally, to the extent Burks challenges the *Howard* charge more generally as pushing the jury to reach a decision it otherwise may not reach, we note the Supreme Court has specifically found the *Howard* charge "is not coercive, and is 'intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus.' " (Further citation and quotation omitted.) *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 128, quoting *Brown* at ¶ 38. For these reasons, we conclude the trial court did not abuse its discretion in providing the *Howard* charge to the deadlocked jury during deliberations. We overrule Burks's second assignment of error.

**V. Burks's Third Assignment of Error – Ineffective Assistance of Counsel**

{¶ 32} In his third and final assignment of error, Burks argues he received the ineffective assistance of counsel.

{¶ 33} In order to prevail on a claim of ineffective assistance of counsel, Burks must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Burks to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. If Burks can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id*. To show prejudice, Burks must establish there is a reasonable probability that, but for his counsel's errors, the results of the trial would have been different. A

"reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 34} In considering claims of ineffective assistance of counsel, courts review these claims with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Burks contends his trial counsel was ineffective in: (1) failing to object to Burks wearing handcuffs and shackles at the start of voir dire and the continued use of leg shackles during trial; and (2) failing to object to law enforcement testimony. Burks additionally argues the cumulative effect of his trial counsel's errors resulted in the ineffective assistance of counsel. We address each of these alleged instances of ineffective assistance of counsel in turn.

### A. Failing to Object to Handcuffs and Shackles

{¶ 35} Burks's first alleged instance of ineffective assistance of counsel is his trial counsel's failure to object to Burks appearing before the jury in handcuffs and shackles. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25.

{¶ 36} At the start of trial, Burks indicated he wished to wear jail clothes for the trial. The trial court engaged in some initial instructions and voir dire of potential jurors before defense counsel requested that Burks's handcuffs be removed. The trial court agreed to the removal of the handcuffs but asked if defense counsel wanted leg irons to remain in place. Defense counsel agreed to the continued use of leg irons. Throughout voir dire, defense counsel asked prospective jurors about viewing Burks in jail clothing and about seeing Burks with leg irons. Burks now argues his trial counsel was ineffective in failing to object to him wearing handcuffs and leg irons in view of the jury.

{¶ 37} "It is well-established that no defendant should be tried while shackled, except as a last resort." *State v. Chester*, 10th Dist. No. 08AP-1, 2008-Ohio-6679, ¶ 5, citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970). *See also State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 104, quoting *State v. Kidder*, 32 Ohio St.3d 279, 285 (1987) ("we have long recognized that 'no one should be tried while shackled, absent unusual

circumstances' "). However, a criminal defendant does not have an absolute right to be free from shackles during trial. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 21, citing *Chester* at ¶ 6. The decision whether to shackle a criminal defendant during trial lies within the sound discretion of the trial court. *Chester* at ¶ 5.

{¶ 38} While shackling is an extreme measure, it is widely accepted that a trial court may require a defendant to be shackled where there is a risk of violence or escape. *Hughes* at ¶ 21, citing *Chester* at ¶ 6. Because shackling is a decision left to the discretion of the trial court, the record should reflect the factors the trial court considered in exercising its discretion. *Id.*, citing *Chester* at ¶ 7. " 'Where the surrounding facts and circumstances illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it.' " *Id.*, quoting *Chester* at ¶ 7.

{¶ 39} Here, the record does not contain a discussion of the trial court's initial decision to have Burks appear in shackles before agreeing to defense counsel's request to remove the handcuffs, and Burks does not assign as error on appeal the trial court's decision to have him appear in handcuffs and leg irons. Instead, his argument on appeal is that his trial counsel was deficient in failing to object to his appearance in shackles. The parties agree there is nothing in the record related to the trial court's initial decision to have Burks appear in handcuffs and leg irons, and it is not for this court to speculate as to the reasons such information is missing from the record. *See State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 92-94, quoting *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 82 (while the Supreme Court of Ohio "continue[s] to emphasize that prior to ordering a defendant to wear restraints, the trial court should hold a hearing on the matter," the United States Supreme Court has not required trial courts to hold such hearings, and in Ohio "a hearing on the necessity for restraints is not an 'absolute rule' "). Relative to Burks's claim of ineffective assistance of counsel, Burks cannot point to anything in the record indicating whether an objection to his initial appearance in handcuffs and leg irons had a reasonable probability of success. *State v. Prophet*, 10th Dist. No. 14AP-875, 2015-Ohio-4997, ¶ 32 (because an appeals court is limited to the record of the proceedings at trial, "[i]t is impossible for a reviewing court to determine on direct appeal whether ineffective

assistance of counsel occurred where the allegations of ineffectiveness are based upon evidence outside the record") (internal quotation and citation omitted).

{¶ 40} While we agree with the parties that the record lacks a discussion of the trial court's initial decision on handcuffs and leg irons, we do not agree with Burks that there is nothing in the record indicating he presented a security or escape risk.  The transcript indicates that when defense counsel asked to remove the handcuffs, the following exchange occurred:

> [DEFENSE COUNSEL]:  I request that Mr. Burks' handcuffs be taken off while at the table here with me.
>
> THE COURT: Before we [d]o, Mr. Burks, if I let that happen, it is a leap of faith that we're not going to have any disruptions, are you prepared to make sure we don't have disruptions as a result of not being cuffed?
>
> DEFENDANT BURKS:  Yes, sir.
>
> THE COURT:  On that basis the Court will allow it and we'll take off Mr. Burks' handcuffs.
>
> Do you want leg irons in place?
>
> [DEFENSE COUNSEL]: That will be fine.

(Tr. Vol. I at 47.)  There was no further discussion of the decision to keep Burks in leg irons for the duration of the trial.  The trial court's statement suggests Burks's behavior prior to the moment defense counsel requested the handcuffs be removed may have warranted the use of restraints, and defense counsel's agreement to the continued use of leg irons indicates the same.  While the record does not contain a discussion of the trial court's specific security concerns, it does document Burks's refusal to cooperate at several instances, including repeatedly refusing to sign a jury waiver for the RVO specifications and having a weapon while under disability charge, refusing to listen to defense counsel, speaking out of turn and interrupting the trial court, and refusing to change out of his jail attire for trial despite his trial counsel encouraging him to do so.  Thus, while the trial court did not make a record of its initial decision to have Burks shackled prior to the start of voir dire, there is other support in the record for the trial court's decision to have Burks in

handcuffs and leg irons. *See State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 17 ("there is no per se error because the trial court did not hold a hearing to address its security concerns" before requiring a defendant to be shackled for trial).

{¶ 41} Burks argues his counsel was ineffective in failing to object to the continued use of leg irons during the trial. He argues that had defense counsel made the objection, the trial court would have removed the leg irons since the trial court had already agreed to remove the handcuffs. However, given the trial court's warning to Burks about his behavior if the handcuffs were to be removed, it is not apparent from the record that the trial court would have agreed to removing the leg irons. *See Jones* at ¶ 52 (a claim of ineffective assistance of counsel based on failure to object must demonstrate a reasonable probability of success had the objection been made). We are additionally mindful that "[s]trategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel." *State v. Thompson*, 10th Dist. No. 18AP-211, 2019-Ohio-2525, ¶ 21, citing *State v. Glenn-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 56. Because defense counsel agreed to the continued use of leg irons during the discussion with the trial court and given Burks's general combativeness with both defense counsel and trial court up to that point, it is possible defense counsel made a strategic decision to keep Burks in shackles for trial to prevent any unwanted outbursts or surprise behavior in front of the jury as the trial progressed. *Id*.

{¶ 42} Even if we were to agree with Burks that his counsel was deficient for failing to object to his initial appearance in handcuffs and leg irons, satisfying the first prong of the *Strickland* test, Burks nonetheless is unable to demonstrate the requisite prejudice under the second prong of *Strickland*. Though he notes the general concern that the use of restraints can erode the presumption of innocence, we are mindful that Burks also elected to appear in front of the jury in jail attire rather than plainclothes even after repeated discussions with his trial counsel. *See Neyland* at ¶ 82 ("[t]he use of restraints tends to erode the presumption of innocence that the justice system attaches to every defendant"), and *State v. Wade*, 10th Dist. No. 22AP-560, 2023-Ohio-3490, ¶ 66 ("the question of whether a criminal defendant's appearance before the jury in identifiable prison or jail clothing violates that person's right to a fair trial focuses on whether the defendant was *compelled* to do so") (emphasis sic). Burks does not articulate how his trial counsel's failure

to object to the handcuffs and leg irons caused him separate prejudice from his decision to appear in jail clothing. Defense counsel extensively questioned the prospective jurors during voir dire on their ability to be fair and impartial despite Burks's appearance in shackles and jail clothing, and Burks does not point to anything in the record indicating the jury was unable to fairly consider the evidence against him because of his brief appearance in handcuffs and his continued appearance in leg irons. The trial court also specifically instructed the jury not to draw any inference from Burks's appearance in jail clothes and that he was entitled to the presumption of innocence. A jury is presumed to follow the instructions of the trial court. *State v. Hicks*, 10th Dist. No. 18AP-883, 2020-Ohio-548, ¶ 23, citing *State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 62.

{¶ 43} Accordingly, Burks is unable to demonstrate, on the record before us, that his counsel was deficient in failing to object to his appearance in handcuffs and leg irons or that he suffered the requisite prejudice under *Strickland* based on his counsel's failure to object. Thus, defense counsel's failure to object to the handcuffs and leg irons here does not substantiate a claim of ineffective assistance of counsel.

### B. Law Enforcement Testimony

{¶ 44} Burks's second allegation of ineffective assistance of counsel is his trial counsel's failure to object to what Burks categorizes as improper testimony from a law enforcement officer. As noted above, to succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, Burks must demonstrate that the objection had a reasonable probability of success. *Jones* at ¶ 52.

{¶ 45} During the trial, Peter Casuccio, an officer with the Columbus Police Department, testified regarding his encounter with Burks on the day of the incident. As relevant here, Officer Casuccio testified he had "reasonable suspicion that [Burks] may be armed," and that he conducted an investigatory *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] pat down of Burks because he felt "a crime ha[d] occurred and the suspect is armed." (Tr. Vol. II at 384.) Additionally, Officer Casuccio testified that when he saw Burks walking away from the vehicle, he became suspicious that Burks was involved in the accident because he was trying to distance himself from the scene. Burks categorizes this testimony from Officer Casuccio as both containing improper opinion testimony and improperly incorporating

legal concepts. Thus, Burks asserts his counsel was deficient in failing to object to Officer Casuccio's testimony.

{¶ 46} Having reviewed the testimony, we find that defense counsel's decision not to object to Officer Casuccio's testimony could have been a reasonable trial strategy. *State v. Robinson*, 10th Dist. No. 20AP-128, 2021-Ohio-3496, ¶ 53 ("it is a valid trial strategy for counsel to decline to object to testimony where an objection would have drawn undue attention to the testimony in question"), citing *State v. C.W.*, 10th Dist. No. 15AP-1024, 2018-Ohio-1479, ¶ 53, quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 90 ("[a] competent trial attorney may well eschew objecting * * * in order to minimize jury attention to the damaging material"). (Further internal quotation and citation omitted.) Here, Officer Casuccio's testimony was limited and brief, and Burks's trial counsel may have made the reasonable strategic decision not to highlight the officer's testimony by objecting to it. Accordingly, Burks's trial counsel was not deficient for his tactical or strategic decision not to object to Officer Casuccio's testimony.

### C. Cumulative Effect of Errors

{¶ 47} Burks finally argues that even if we conclude that neither of the above alleged instances of ineffective assistance of counsel are sufficient to substantiate a finding of ineffective assistance of counsel standing alone, the cumulative effect of these errors nonetheless resulted in Burks being denied a fair trial.

{¶ 48} Burks relies on *State v. DeMarco*, 31 Ohio St.3d 191 (1987) for the proposition that although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id.* at paragraph two of the syllabus. Burks urges us to conclude that his trial counsel's representation as a whole deprived him of a fair trial.

{¶ 49} Where a defendant has not established individual claims of ineffective assistance of counsel, "he cannot establish a right to relief by simply joining those claims together." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 222. Having already determined neither of Burks's individual claims of ineffective assistance of counsel have merit, Burks cannot combine them together now.

{¶ 50} Additionally, even if were to agree with Burks that his counsel's overall performance was deficient under the first prong of *Strickland*, we are nonetheless

constrained by the second prong of *Strickland* which requires Burk to demonstrate that but for his counsel's performance, the outcome of the proceedings would have been different. Having reviewed the record, we find there was ample evidence establishing Burks's guilt, including eyewitness testimony of his identity. Aside from his argument related to Officer Casuccio's testimony, Burks's allegations of ineffective assistance of counsel do not relate to the ample additional evidence linking him to the offenses. Thus, because Burks does not demonstrate the requisite prejudice under the second prong of *Strickland*, the cumulative effect of the alleged errors did not deprive him of a fair trial. *Thompson*, 2019-Ohio-2525, at ¶ 38.

{¶ 51} Therefore, we overrule Burks's third and final assignment of error.

## VI.  State's Cross-Assignment of Error − Indefinite Sentences

{¶ 52} In its sole cross-assignment of error, the state argues the trial court erred in imposing definite prison terms in violation of the Reagan Tokes Law.

{¶ 53} Effective March 2019, the Reagan Tokes Law provides that first- and second-degree felonies not already carrying a life sentence are subject to an indefinite sentencing scheme consisting of a minimum and maximum prison term. The Reagan Tokes Law creates a presumption that the offender will be released from incarceration after serving the minimum prison term but gives the Ohio Department of Rehabilitation and Correction ("ODRC") the opportunity to rebut that presumption, in which case ODRC may maintain the offender's incarceration up to the maximum prison term set by the trial court at sentencing. R.C. 2967.271(B), (C), and (D)(1).

{¶ 54} During the sentencing hearing, the state argued the Reagan Tokes Law applied and urged the trial court to impose the indefinite sentencing structure for Burks's convictions of felonious assault and discharge of a firearm on or near prohibited premises. The trial court acknowledged the Reagan Tokes Law would apply to the first- and second-degree felonies of felonious assault and discharge of a firearm on or near prohibited premises but found the indefinite sentencing scheme in the Reagan Tokes Law to be unconstitutional. Instead, the trial court imposed definite sentences on Counts 1, 2, and 3. The state now argues on appeal that the trial court erred in finding the Reagan Tokes Law unconstitutional and in refusing to apply the indefinite sentencing scheme.

{¶ 55} While this appeal was pending, the Supreme Court issued a decision finding the Reagan Tokes Law to be facially constitutional. *Hacker*, 2023-Ohio-2535, at ¶ 41. Following the Supreme Court's decision in *Hacker*, we find the trial court's imposition of definite sentences for Burks's first- and second-degree felony convictions of felonious assault and discharge of a firearm on or near prohibited premises is contrary to law. *State v. Harris*, 10th Dist. No. 21AP-678, 2023-Ohio-3994, ¶ 118 (applying *Hacker* to state's appeal regarding trial court's failure to impose the indefinite sentencing scheme required by the Reagan Tokes Law). Thus, we must remand this matter to the trial court for resentencing in accordance with the Reagan Tokes Law.

{¶ 56} Accordingly, we sustain the state's sole cross-assignment of error.

## VII. Disposition

{¶ 57} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support Burks's convictions of felonious assault, discharge of a firearm on or near prohibited premises, tampering with evidence, and having a weapon while under disability, the trial court did not abuse its discretion in providing the *Howard* charge to the jury, and Burks did not receive the ineffective assistance of counsel. The trial court erred, however, in failing to impose the indefinite sentencing scheme required by the Reagan Tokes Law. Having overruled Burks's three assignments of error but having sustained the state's sole cross-assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for resentencing in accordance with the Reagan Tokes Law.

*Judgment affirmed in part and reversed in part*;
*cause remanded with instruction.*

BOGGS and EDELSTEIN, JJ., concur.

———————————